At the time of the proceedings before the surrogate, the plaintiff had a vested legal estate in the premises assigned to her, under the decree in chancery, absolute for her life; unless her right and title was subject to and qualified by the 31st section of the act 2 R.S. 99. (Com. Dig. tit. Dower, ch. 4, § 1; 1 R.S. 740, § 16; 4 Kent's Com. 69.) This section provides that the conveyances executed to purchasers upon a sale by order of the surrogate, "shall be deemed to convey all the estate, right and interest in the premises of the testator or intestate at the time of his death, free and discharged from all claim
for dower of the widow of said testator or intestate.
Before assignment the widow has no estate in the lands of her husband; her right is a mere chose in action which cannot be sold upon execution at law. Until that time it is strictly a claim. (Greenleaf's Cruise, vol. 1, tit. Dower, ch. 3 and note.) The ordinary signification of claim, is that of a right or title, actual or supposed, to a debt, privilege or other thing in the possession of another. Most persons distinguish readily enough between a claim for dower and the estate itself in the actual possession of the person entitled thereto. No one thinks of confounding a claim for possession, with possession in fact. Writers speak of possession, of the right of possession, and the mere right. Each has its distinct and appropriate meaning; they may exist in different individuals, although their union in the same person is necessary to a perfect title. A claim, is the means by or through which the claimant obtains the possession or enjoyment of the thing sought. It is the means to an end, and not the end itself. It is true, that the word may sometimes stand for the subject claimed. And so may cause for effect. The distinction between the two is somewhat important, notwithstanding.
It may be granted that if Mrs. Lawrence, after assignment, had conveyed all her claim for dower to the premises in her possession, she would have transferred all her interest to the purchaser. And the same might be said of a person who owned his farm in fee simple. But in those cases, courts would seek *Page 255 
for the intent of the parties in their situation and the state of the property, and modify the primary and popular signification of the term used by them, so as to give effect to the conveyance. Neither the parties or their legal advisers would, I apprehend, speak of selling a claim, when they intended to dispose of a freehold estate in possession. The legislature must be presumed to have used the word in question, in its ordinary and popular sense, unless there is something in the subject to which it is applied, or in other provisions of the act to indicate a different design. And first as to the subject. Dower is, perhaps, of all others, the estate most favored in law and equity. (3Brown's Ch. 264.) It is distinctly recognized and protected in our statute, and a presumption of a change in the law to the prejudice of the widow, is not to be indulged. Again, by the common law, although the title of the widow is consummate upon the death of the husband, she is not seized, but the heir; and she consequently claims through his seizin. (Cruise's Dig. tit.Dower, ch. 3, § 1.) But by assignment of dower, the seizin of the heir is defeated ab initio, (Id. ch. 3, § 24,) and the dowress is in of the seizin of her husband, as of the time when that seizin was first acquired. It is upon this principle that the widow can elect under which seizin she will hold, where lands have been sold after marriage and repurchased by the husband. (Co. Lit. 588, 33, a, and note.) For the same reason, she holds the lands discharged of all incumbrances created subsequent to the marriage, if the husband was then seized, because in the language of Cruise, "her title has relation to the time of the marriage, and to the seizin which her husband then had."
(Cruise's Dig. tit. Dower, tit. 6, ch. 2, § 34.) Her estate, is a continuation of the husband's, commencing at the time of the purchase, if the lands were acquired after marriage. (Id. tit. 6, ch. 2, § 17; Co. Lit. supra.)
By the 31st section above quoted, the surrogate's deed conveyed all the estate, right and interest of the husband at the time
of his death. That interest was a fee in possession, subject to all incumbrances, the widow's claim for dower included. This estate descended to the heir, and he also could transfer a fee in possession before assignment to a purchaser. The object *Page 256 
of the statute was to extinguish the claim for dower, while the heir was seized of the same estate, both in quantity and quality, that was in the ancestor at the time of his death. It gives to the purchaser, under the surrogate's order, just what the intestate had at his death and no more, with the exception of the discharge of dower.
But by the assignment of dower, the widow took a freehold estate, the right to which accrued in 1825, when the land in question was purchased by her husband, and her title by relation commenced at that time. (Viner's Abr. tit. Relation; 3 Cowen'sR. 75; Cruise's Dower, tit. 6, ch. 2, § 34.) It displaced the seizin of the heir, and that of the husband which was in him at the time of his death, and from that period, turned the estate of the former into a reversion, expectant upon the determination of her estate. When proceedings for the sale were commenced before the surrogate, there were two estates, one for life, and a reversion expectant upon its determination. They originated at different times, and under a different seizin; that of the heir at the death of the intestate, that of the widow when the land was acquired. Together they would not make the same estate of which the husband died seized. That was subject to the claims of his creditors, and to a general claim for dower extending to all the lands of which he was seized during the marriage. After assignment, the estate of the widow overreached the former and extinguished the latter. The difference in interest is still more striking in those cases where the estate is largely incumbered. The widow's estate might be valuable while the whole fee of which the ancestor and the heir were seized, might not be worth the expense of a sale.
According to the views of the defendant the 31st section annuls the estate of the widow which she held as purchaser under a title reaching back to 1825, in favor of debts subsequently contracted, and revives her general claim against all the lands of the testator, which the statute of dower declares shall be for ever barred by the assignment. (1 R.S. 742, § 23.) This claim, extending to all the lands of the intestate, was the evil which the legislature intended to suppress, because it would *Page 257 
probably always depreciate the value of the whole real estate beyond the value of the widow's interest. This would occasion loss to the estate and to creditors without a corresponding benefit to any one. The 31st section therefore very properly afforded a remedy by substituting a pecuniary recompense for a claim thus indefinite. But when dower is assigned, the reason for the provision ceases. The purchaser knows what he is buying, and the law in directing compensation, assumes that the value of the widow's claim can be accurately calculated.
Again, by section 5, the order to show cause must be directed to all persons interested in the estate. Prior to the assignment, the widow's claim is upon all the real estate of the intestate: she is then interested in the estate, and entitled to the notice provided by the 6th and 7th sections. After assignment her interest ceases, and she is then remitted to her dower which she holds by title paramount to the heirs and the creditors of her husband. By the 10th section, the heir or devisee of the decedent, or any person claiming under them, may contest the facts alleged by the executor or administrator, c. The widow, before assignment, claims under and through the seizin of the heir, and may litigate; after assignment, she is in of the estate and seizin of the husband, and cannot. If she is not entitled to notice, nor the right to litigate, she cannot be bound by the decree of the surrogate. Without adverting to other parts of the act, it is sufficient to say, that they do not conflict with the construction given to the 31st section.
I think the authority of the surrogate to direct a sale, "free from all claim of dower," must be limited to cases where the heir upon whom the law casts the estate of the intestate could convey a fee in possession. In other words, it must be exercised, if at all, before the assignment of dower. Upon this construction, full effect can be given to the whole section; no estate is displaced; the tenants of the dowress are protected: she may bequeath the crops on the land holden by her. (1 R.S. 744, § 25.) The provisions of this act harmonize with those of the statute concerning dower, and the only change is, that a claim, a chosein action, is made the subject of pecuniary compensation *Page 258 
out of the proceeds of the land to which it relates. The judgment should be reversed.
JEWETT, C.J. and BRONSON and HOYT, Js. dissented.
Judgment reversed.¹